*Edward A. Zunz, Jr.,* argued the cause for appellants (*Riker, Danzig, Scherer & Hyland,* attorneys; *J. Ferd Convery, III,* on the brief).

*Mary R. Hamill,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

PER CURIAM.

The judgment of the Appellate Division is affirmed, substantially for the reasons expressed in the opinion of the Tax Court, reported at 4 *N.J.Tax* 42 (Tax Ct.1982).

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK and O'HERN—5.

*For reversal*—None.

IN THE MATTER OF SCOTT L. SALIT, AN ATTORNEY
AT LAW.

January 23, 1984.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that SCOTT L. SALIT of PLAINFIELD be publicly reprimanded for violations of DR 7–101(A)(2), DR 9–102(A) and (C), DR 1–102(A)(6), and DR 2–101(B)(3), and the Court having considered the record and arguments of counsel, and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and made a part of this Order; and it is further

ORDERED that SCOTT L. SALIT be and hereby is publicly reprimanded for his violations of the foregoing disciplinary rules; and it is further

ORDERED that respondent shall not be permitted to engage in the private practice of law unless he shall have a preceptor, selected by the Disciplinary Review Board, oversee his practice as follows:

1. the preceptor shall contact each of the respondent's present clients and shall participate in the initial interview of

each future client and advise the clients of the preceptor's role in the matter;

2. the preceptor shall actively supervise the conduct and progress of each case, communicate with the clients as needed, and participate in the settlements of any case; and

3. the preceptor shall submit quarterly reports to the Office of Attorney Ethics concerning the status of respondent's cases and trust account throughout the period and advise of any change in the conditions of the practice or of his availability; and it is further

ORDERED that the Office of Attorney Ethics shall review this matter after two years have passed and shall report to the Disciplinary Review Board, which shall, in turn, make a report to this Court recommending a retention, modification or termination of the preceptorship; and it is further

ORDERED that respondent reimburse the Administrative Office of the Courts for administrative costs incurred in this matter, including transcripts.

APPENDIX

Decision and Recommendation of the Disciplinary
Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon a presentment filed by the District XII Ethics Committee for Union County. The presentment concerns respondent's improprieties in soliciting clients for what was purportedly a pre-paid legal services plan, his subsequent failure to perform contracts of employment, and, even more important, his failure to cooperate in an ethics proceeding.

In early 1981, a letter drafted and signed by the respondent was forwarded to each member of the Middlesex County Education Association (MCEA). The respondent's wife was then first vice president of that group. Respondent's letter offered "Pre-paid Legal Services" to the association members. Pre-paid legal services was defined in that letter as follows:

"for a fixed price the client will have retained counsel, on call, for a one-year period, subject to certain limitations contained in the retainer agreement between the MCEA Member/Client and my office."

Respondent's fee for this service was $200 per year. Although the respondent had very limited experience in the practice of law, the list of services covered by the plan encompassed non-litigation as well as both civil and criminal litigation. The respondent also prepared a form Retainer Agreement which did not contain the term "pre-paid legal services." A total of 8 MCEA members signed this retainer agreement. The two individuals who filed the within complaints against respondent were among that group.

## I. *Pusillo Complaint*

Barbara Pusillo consulted with the respondent concerning her matrimonial problem prior to signing the retainer agreement. She took the agreement home with her, then signed it and returned it to respondent with the $200 fee, together with an additional $100 as an advance for costs. These payments were made via two separate money orders which were never cashed or deposited by respondent. In fact, the respondent testified that he had no record of receiving the money orders. Ms. Pusillo ultimately recovered her $300 from the company which sold her the money orders.

The respondent then prepared "papers" which apparently consisted of a divorce complaint and verification, and forwarded these items to Ms. Pusillo in May, 1981. She signed these documents and returned them to the respondent. However, the Superior Court Clerk never received a complaint on behalf of Barbara Pusillo. Respondent contended that he did not file the complaint because he never received either the retainer or the advance for costs. Ms. Pusillo contended that she repeatedly asked respondent about the status of her case over the next six months. Respondent assured her that although the clerk had not received her complaint, he would prepare a duplicate for Ms. Pusillo's signature. Respondent claimed that although he spoke

with Ms. Pusillo on several occasions, their relationship gradually deteriorated. He did concede that he never advised Ms. Pusillo by letter that he would not proceed with her case since he had not received the retainer or money for costs.

## II. *Buydos Complaint*

Complainant Andrew Buydos also received the respondent's letter to MCEA members. He sought the respondents advice concerning a divorce, since he had recently separated from his wife. The respondent requested and collected the $200 retainer, and advised Buydos that a divorce could not be obtained for 18 months. It is unclear whether Buydos was aware that representation on his divorce would not be covered by the retainer, given the fact that the retainer covered only a 12 month period. Following payment of the retainer, Buydos called the respondent on numerous occasions but received only one return call, at which time the respondent again advised him to wait until 18 months had passed.

Buydos' retainer was returned with interest after respondent obtained counsel to defend the ethics complaints filed against him.

At hearing before the District XII Ethics Committee, the respondent testified that he believed he was exempt from the requirement of Supreme Court approval of pre-paid legal services since his "plan" was neither a closed plan nor a plan offered directly by an organization such as MCEA. Rather, the plan created by him constituted a direct agreement between the client—MCEA members and the respondent. He did not attempt to obtain legal advice on that question and did not present an inquiry to the Supreme Court's Advisory Committee on Professional Ethics. Respondent further contended that his actual retainer agreement did not use the term "pre-paid legal services", although that agreement described the same services described in his prior letter as "pre-paid legal services". Additionally, the respondent testified that he had advised MCEA that it would be economically unfeasible for that organization to provide pre-paid legal services coverage to its members, and,

further, that prior to offering such a benefit, respondent would have to submit the plan to the Supreme Court for its approval. The Committee concluded that under these circumstances the respondent's elimination of the phrase 'pre-paid legal services' was a conscious attempt to avoid the registration requirements of *DR* 2–103(D)(4)(g). The District XII Ethics Committee further found that the respondent was unprofessional in his dealings with Mrs. Pusillo, in that he failed to advise her that he would not proceed without payment of his fee and costs. Similarly, he should not have taken a retainer from Mr. Buydos when he was aware that he could perform no service until after the period covered by the retainer expired. In both cases he failed to carry out a contract of employment in violation of *DR* 7–101(A)(2). The Committee also concluded that the letter drafted by respondent and forwarded to MCEA members was misleading since it offered more than the respondent could reasonably provide, and therefore violated *DR* 2–101(A), (B)(3) & (5) and *DR* 2–103(B)(1). In addition to the complaints filed by Mr. Buydos & Mrs. Pusillo, the Committee considered the respondent's failure to cooperate with the Disciplinary Review Board, the accountant retained by the Division of Ethics and Professional Services, as well as the Ethics Committee and its representatives. The Committee concluded that this constituted gross irresponsibility. Although the respondent underwent psychiatric treatment during the pendency of the ethics complaints, the committee did not find that respondent's unprofessional behavior was specifically related to any psychological difficulty. This failure to cooperate was considered by the Committee to be a violation of *DR* 1–102(A)(6). The Committee noted that the respondent failed to segregate his attorney trust account from his business account in violation of *DR* 9–102(A) and (C), although the error was apparently caused by sloppy practices, since no client funds were misused in any way.

The Committee concluded further that the respondent's conduct in the aggregate exhibited a pattern of negligence in violation of *DR* 6–101(A)(2).

At hearing before the Disciplinary Review Board, the respondent, by his attorney, agreed that his conduct was both irresponsible and unprofessional for a period of time. He reiterated his contention that registration of the legal services plan offered by him was not required by DR 2–103(D). He noted that his failure to cooperate with the ethics proceedings caused harm only to himself, and attributed conduct to depression which resulted in part from his failure to succeed professionally while his wife became quite successful. He further stated that he now comprehends the obligations of an attorney to his client, and would not violate that duty in the future.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that a majority of the conclusions of the Committee in finding unethical conduct on the part of respondent are fully supported by clear and convincing evidence. The Board agrees that the respondent failed to carry out his contracts of employment with Mr. Buydos and Mrs. Pusillo in violation of DR 7–101(A)(2). His failure to maintain his accounts properly violated DR 9–102(A) and (C). His failure to cooperate with the Disciplinary Review Board and Ethics Committee clearly violated DR 1–102(A)(6). Additionally, the Board agrees with the Committee that the respondent's letter to MCEA members was misleading in violation of DR 2–101(B)(3) since the all-inclusive listing of services covered was ".... likely to create an unjustified expectation." The Board is not, however, convinced that the respondent violated DR 2–103(D) in offering legal services to MCEA members. MCEA was not directly involved in recommending, furnishing or paying for respondent's services, and the respondent's "plan", as such, is therefore not within the parameters of that disciplinary rule.

The respondent's failure to recognize his responsibility to his clients, combined with his failure over a significant period of

time to cooperate with those involved in the ethics system indicates to the Board that the respondent is not sufficiently responsible to be permitted to practice law as a sole practitioner. The Board is convinced that some strictures must be placed on the respondent to insure that these improprieties do not occur again. The Board therefore recommends that a public reprimand be imposed on the respondent. In addition, since respondent has stated that he is not currently engaged in the practice of law, the Board recommends that the respondent be permitted to return to the active practice of law only as an associate or partner of an established practicing attorney or firm. This arrangement should continue for a period of two years. In the event that the respondent fails to comply fully with these conditions, he should be suspended immediately from the practice of law.

The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for administrative costs, including production of transcripts.